**FIELD MEASUREMENT SERVICE, INC., Appellant,**

v.

**Roy L. IVES and Ruby L. Ives et al., Appellees.**

**No. 1609.**

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 26, 1980.

Rehearing Denied Dec. 18, 1980.

Larry D. Woody, Woody, Gumm & Hoffman, Victoria, for appellant.

Anthony Field Constant, Corpus Christi, for appellees.

James H. Murray, Jr., David A. Smith, Anderson, Smith, Null, Stofer & Smith, Victoria, for intervenor.

## OPINION

YOUNG, Justice.

This appeal of a take nothing judgment involves the rights in certain property of the appellant, B. W. Duke, both individually and as a stockholder of Field Measurement Service, Inc., in a derivative action. The act giving rise to the suit was the alleged fraudulent execution of a deed of property to a shareholder instead of to a different grantee intended by the corporation. Appellant brought suit for fraud and cancellation of a deed against the alleged perpetrators of the fraud, Roy and Ruby Ives, appellees, and a trespass to try title suit against the subsequent purchaser of the property, W. G. Maroney, appellee, seeking imposition of a constructive trust. The trial court entered its take nothing judgment based upon findings of the jury. We affirm.

The salient facts giving rise to this appeal and some of the litigants' version thereof follow. B. W. Duke was a majority shareholder of Field Measurement Service, Inc. (FMS, Inc.), a corporation duly organized by Duke whose principal business was measuring natural gas flow for oil field clients. Roy and Ruby Ives were minority stockholders in the corporation, and J. J. Smith was the president of the corporation and was the manager of the branch office in Corpus Christi.

Duke testified at the trial that the Ives and Duke were co–owners of a certain tract of land. They both agreed to trade that land for 2.5 acres, splitting the 2.5 acres into two parcels: Duke kept 1.85 acres and Ives got the remaining .65 acres. After that division of the property, there were no more transactions.

Roy Ives testified somewhat differently. According to him, Duke acquired the subject property partially as a result of a trade by Ives of some property he owned. The original size of the tract was 2.5 acres, .65 acres of which were deeded to Ives by Duke after the purchase. Ives further testified that Duke was to convey the remaining 1.85 acres to Ives in exchange for permitting the corporation to use the subject property.

In 1966, Duke conveyed 1.85 acres to FMS, Inc. as a site for the headquarters of the corporation. It is the ownership of this land that is disputed in this appeal. A lien was impressed against the property when the corporation borrowed money from Yoakum Federal Savings and Loan Association for improvements.

Allegedly, the Board of Directors of FMS, Inc. agreed to transfer the subject tract back to Duke. On August 20, 1967, Smith, the President of FMS, Inc., signed a deed in the office of the Ives in Victoria, allegedly conveying the property to Duke. Duke was present at the execution of the deed. The deed did not convey title to Duke, however, but conveyed the property to the Ives. Neither Duke nor Smith examined the deed before execution.

Duke did not learn of the fraudulent nature of the deed until September of 1971, when, through Duke, the corporation brought suit against the Ives for fraudulent conveyance. On October 26, 1977, Duke amended the original petition of FMS, Inc. to individually sue Maroney in trespass to try title. Maroney had purchased the property from Ives on August 2, 1971. Duke also brought a stockholders derivative suit against the Ives for fraud. Duke further amended his pleadings on November 29, 1977, and on August 31, 1978, by means of a trial amendment, sued the Ives in his individual capacity.

From a liberal reading of the pleadings of Duke, the relevant causes of action brought by Duke are as follows: 1) Duke individually brought a trespass to try title action against Maroney; 2) Duke, as a stockholder and individually, brought a derivative action against the Ives to set aside and to cancel the deed for reasons of fraud or, in the alternative, to impose a constructive trust against the Ives; and 3) Duke, individually, sought to set aside and to cancel the deed or, in the alternative, to impose a constructive trust for the benefit of Duke.

Twenty–nine (29) special issues were submitted to the jury. As to the Ives and Duke, the jury found that a confidential agency relationship existed between them. The deed itself was found to be lacking an acknowledgement. The jury also found that Duke never intended for the property to be transferred to the Ives, nor did Duke agree to deed the property to the Ives. Furthermore, Duke did not waive his right to complain of the deed. As between the Ives and Smith, the jury found that the Ives misrepresented the contents of the deed to Smith, that such misrepresentation was a material inducement to sign the deed, and that but for such misrepresentation, Smith would not have signed the deed. However, the jury found that the Ives exerted no undue influence, and that the corporation, which Smith represented, suffered no injury as a result of such misrepresentation. Duke, however, did suffer injury.

As to the question of when Smith and Duke knew or should have known of the contents of the deed, the jury found that both men should have known on the day of signing, August 30, 1967, that the deed gave the property to the Ives. Smith was found to be negligent in failing to read the deed.

Maroney, who purchased the property from the Ives on August 2, 1971, was found by the jury to have paid valuable consideration and to have purchased in good faith, but he also purchased with notice of claim or interest of Duke. Maroney was also found to have possessed the property adversely for three consecutive years.

The trial court, finding probative evidence to support all the answers to the special issues by the jury, entered a take nothing judgment for the Ives and Maroney. The judgment did not recite any theory of law on which the decision was based.

In our review of this take nothing judgment, we must affirm the judgment of the trial court on any legal theory that finds support in the evidence. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.Sup.1968); *Godde v. Wood*, 509 S.W.2d 435 (Tex.Civ. App.–Corpus Christi 1974, writ ref'd n. r. e.). The trial court, finding probative evidence to support all the answers to the special issues, could have entered judgment on many different theories of law. After thoroughly reviewing the record, we agree with the trial court that the jury's findings are supported by the testimony and exhibits offered at trial. *Burnett v. Motyka*, 610 S.W.2d 735 (1980).

Although appellant asserts 31 points of error which separately raise many issues, the crux of this appeal is the statutes of limitations defenses affirmatively pled by the appellees. They contend that any action for fraud, constructive trust, trespass to try title, or a suit to cancel the deed is barred by either the two or four year statutes of limitations. Tex.Rev.Civ.Stat.Ann. art. 5526, 5529 (1958). The statutes of limitations defenses act as a bar to actions filed by both Duke and the corporation, FMS, Inc.

It is clear that the suit by appellant was not brought within either the two or the four year limitations period. The deed from FMS, Inc. to the Ives, which was allegedly fraudulently executed, was signed on August 30, 1967. On September 22, 1971, FMS, Inc. filed suit against the Ives to cancel the deed. Not until October 26, 1977, did appellant Duke, in his capacity as a stockholder of FMS, Inc., become a party to the suit. On August 31, 1980, Duke filed a trial amendment to sue the Ives in his individual capacity.

Appellant Duke contends, however, that the statutes of limitations were tolled until the time Duke knew that the deed did not convey the property to him but rather conveyed it to the Ives. Duke asserts that, as a matter of law, the causes of action are not barred because of the confidential relationship that excused Duke from becoming aware of the fraudulent acts of the Ives. In this regard, the jury, in answer to special issues, found that a confidential relationship existed between Duke and the Ives and that the Ives were agents of Duke.

It is important to note from the onset that legal and equitable title to the property was in the *corporation, FMS, Inc.* The deed, which was allegedly fraudulently executed, on its face conveyed legal title to the Ives. Equitable title remained in the corporation. The party bringing this suit, Duke, had neither equitable nor legal title. Therefore, unless the suit was properly filed within the limitations period or the statutes were tolled by the confidential relationship, Duke should not prevail in this action. *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62 (1959); *Hardeman v. Mitchell*, 444 S.W.2d 651 (Tex.Civ.App.–Tyler 1969, no writ); *Hoggett v. Wright*, 374 S.W.2d 690 (Tex. Civ.App.–San Antonio 1964, writ ref'd n. r. e.).

In an arm's length transaction, knowledge of facts that would have excited inquiry in the mind of a reasonably prudent person, which if pursued by him with reasonable diligence would lead to the discovery of the fraud, is equivalent to knowledge of the fraud as a matter of law. *Courseview, Inc. v. Phillips Petroleum Company*, 158 Tex. 397, 312 S.W.2d 197, 205 (Tex.Sup.1958); *Bush v. Stone*, 500 S.W.2d 885 (Tex.Civ.App.–Corpus Christi 1973, writ ref'd n. r. e.). In a confidential relationship, however, " . . . diligence on the party defrauded does not exact as prompt and as searching an inquiry into the conduct of the other party as where the parties were strangers or were dealing with strangers." *Bush v. Stone*, supra at 890.

In the case before us, the jury not only found that a confidential relationship existed between Duke and the Ives but also that an agency relationship existed between them. Inherent in an agency relationship is the fiduciary duty owed by the agent to his principal. The fiduciary relationship is one of the circumstances to be considered in determining whether fraud might have been discovered by the exercise of reasona-

ble diligence. "By entering into fiduciary relations, the parties consent as a matter of law to have their conduct measured by the standards of the finer loyalties exacted by courts of equity." *Courseview, Inc. v. Phillips Petroleum Company*, supra.

■ The burden to exercise reasonable diligence in discovering the fraud is not altered by the existence of the confidential relationship. The trust and confidence in the relationship are merely evidentiary matters bearing on the issue of whether the defrauded party acted as would a person of ordinary prudence in discovering the fraud. *Bodovsky v. Texoma National Bank of Sherman*, 584 S.W.2d 868 (Tex.Civ.App.–Dallas 1979, writ ref'd n. r. e.); see *Keel v. Hoggard*, 590 S.W.2d 939 (Tex.Civ.App.–Waco 1979, no writ). A finding of confidential relationship is not controlling on the issue of whether the statutes of limitations are tolled. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.Sup. 1963).

■ All of these considerations were before the jury when they found that both Duke and Smith (who was an officer of FMS, Inc.) should have known on August 20, 1967, that the deed conveyed the property to the Ives. After reviewing the record in order to determine both the factual and legal sufficiency of the evidence in support of the jury's findings, we hold that the answers to the special issues have ample support. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1951); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965). The jury was well aware of the confidential relationship between the Ives and Duke as evidenced by their findings but they still found that as of August 30, 1967, Duke should have known that the deed gave the property to Ives. Thus, the statutes of limitations began to run on that date.

The cause of action brought by FMS, Inc., was not filed until September 22, 1971, more than four years after the date which the jury determined to be the time at which both Duke and Smith should have known of the alleged fraudulent deed. Not until six years later did Duke, individually, become a party to the suit. Even if the statutes were tolled in order to permit the filing of the action by FMS, Inc., there is no such tolling of the statutes so as to permit Duke, individually, to bring his action some six years after he had actual knowledge of the fraudulent deed.

As stated in *Courseview*, each case must rest on its own facts. The record in this case clearly supports the jury finding that Duke failed to discover the fraud within the four years from the signing of the deed due to lack of diligence on his part. Even if we were to disregard the jury's answers, as a matter of law Duke would still be unable to bring his individual cause of action against the Ives because of his failure to file within four years from the date on which he had actual knowledge of the fraud (September 22, 1971).

■ Furthermore, we are unpersuaded that this case falls within the exception to the four year statute of limitations set out in *Hall v. Miller*, 147 S.W.2d 266 (Tex.Civ. App.–San Antonio 1941, writ dism'd, judgment cor.) Duke asserts his right to a constructive trust, but this equitable remedy is clearly barred if not brought within four years. *Miles v. Martin*, supra.

Appellants also challenge the take nothing judgment as to appellee Maroney. Maroney was found by the jury to have paid valuable consideration for the subject property and that he purchased in good faith. However, the jury also found that Maroney purchased the property with notice of claim or interest of Duke. The jury further found that Maroney had adverse possession of the property for at least three consecutive years. Tex.Rev.Civ.Stat.Ann. art. 5507 (1958).

■ "Title" or "color of title" is a necessary prerequisite to be entitled to the protection of the three year statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 5507 (1958). Clearly a void deed is neither title or color of title. *Reynolds v. Farmers & Merchants National Bank*, 135 S.W.2d 556 (Tex.Civ.App.–Fort Worth 1940, no writ). In this case, however, the deed did convey

legal title to the Ives; therefore, Maroney is deemed to have received the same legal title to the property from the Ives. This title, coupled with the jury's finding of three years of continuous, adverse possession, is sufficient to vest title to the property in Maroney. We have considered all of appellant's points of error and we overrule each of them.

The judgment of the trial court is affirmed.